Stuart M. Price, Esq. (SBN:150439)
**Price Law Group, APC**
6435 Balboa Boulevard, Suite 247
Encino, CA 91316
T: (818) 205-2466
E: Stuart@pricelawgroup.com
Attorney for Plaintiffs,
*Michelle Bell-Rodriguez*
*Mario Rodriguez*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIO RODRIGUEZ and MICHELLE BELL-RODRIGUEZ, husband and wife,<br><br>Plaintiff,<br><br>vs.<br><br>GOLDEN VALLEY LENDING, INC.,<br><br>Defendants. | **Case No.** 2:17-cv-8682<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. TCPA, 47 U.S.C. § 227<br>2. Invasion of Privacy – Intrusion Upon Seclusion |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Mario Rodriguez ("Rodriguez") and Michelle Bell-Rodriguez ("Bell"), together as "Plaintiffs", through their attorneys, allege the following against Golden Valley Lending, Inc. ("Golden Valley" or "Defendant"):

## INTRODUCTION

1. Count I of Plaintiffs' Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the

TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Plaintiffs' Complaint is based upon the Invasion of Privacy – Intrusion Upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts. §652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns… that would be highly offensive to a reasonable person."

## JURISDICTION AND VENUE

3. Jurisdiction of the court arises under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

4. Venue is proper pursuant to 28 U.S.C. 1391(b)(1) and 28 U.S.C. 1391(d) in that Defendant resides in the State of California.

5. Defendant transacts business here; therefore, personal jurisdiction is established.

## PARTIES

6. Plaintiffs are natural persons residing in Las Vegas, Clark County, Nevada.

7. Defendant is a financial institution with its principal place of business located in Upper Lake, California. Defendant can be served with process through its headquarters at 635 East Hwy 20, E, Upper Lake, California 95485.

8. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

9. Defendant is attempting to collect an alleged debt from Bell.

10. In or around September of 2016, Defendant began placing calls to Bell's cellular phone (XXX) XXX-5778 in an attempt to collect the alleged debt.

11. The calls placed by Defendant mainly originated from (855) 497-0300. Upon information and belief, that phone number is owned or operated by Defendant.

12. During a phone call on October 26, 2016, Bell answered a call from Defendant. She heard a pause before a collection agent began to speak, indicating the use of an automated telephone dialing system.

13. Bell spoke with Defendant's representative, "Melissa," and Defendant's agent informed her that it was attempting to collect a debt. During that call, Bell unequivocally revoked consent to be called any further.

14. Bell's request was ignored, as Defendant continued to place phone calls to her cellular phone regularly.

15. During a phone call on December 12, 2016, Bell answered another call from Defendant.

16. Bell spoke with Defendant's representative. Defendant informed Bell that it was attempting to collect a debt. During that call, Bell unequivocally revoked consent to be called any further for a second time.

17. Again, Bell's request was ignored as she continued to receive regular phone calls from Golden Valley.

18. During a phone call on March 3, 2017, Bell answered a call from Defendant.

19. Bell spoke with Defendant's representative, "Lesley," and Defendant's agent informed her that it was attempting to collect a debt. During that call, Bell unequivocally revoked consent to be called any further for a third time.

20. After Bell's revocation during the March 3, 2017 call, Bell was told that Defendant had a right to continue to call Bell regarding her debt, even after being told to stop.

21. Between March 3, 2017 and June 3, 2017, Defendant continued to place phone calls to Bell's cellular phone, despite her three clear revocations of consent to be called. Some days, Bell and her husband would receive calls in rapid succession.

22. In addition to the three calls in which Bell requested that the calls stop, Bell also received multiple voicemail messages when Bell was unable to answer the phone.

23. On or about April 6, 2017, Bell's husband, began receiving phone calls from Golden Valley to his cellular phone at (XXX) XXX-2714 in an attempt to collect Bell's debt.

24. Rodriguez's name was not on his wife's Golden Valley account and Rodriguez never gave Golden Valley permission to call his cellular phone.

25. On April 6, 2017, Golden Valley placed a phone call to Rodriguez at 1:29 p.m. That same day, they placed a phone call to Bell at 2:28 p.m. Two minutes later, at 2:30 p.m., Golden Valley placed their second call to Rodriguez that day.

26. On May 4, 2017, Golden Valley placed a phone call to Rodriguez at 10:51 a.m. That same day, they placed a phone call to Bell at 12:45 p.m. and left a voicemail. Three minutes later, at 12:57 p.m., Golden Valley placed their second call to Rodriguez that day.

27. On June 13, 2017, Defendant called Bell's cellular phone at 12:30 p.m. and one minute later, at 12:31 p.m., Defendant called Rodriguez's cellular phone.

28. Between October 26, 2016 and June 23, 2017, Defendant called Bell's cellular phone approximately one hundred (100) times, despite her multiple requests that the calls stop.

29. Between April 6, 2017 and June 23, 2017, Defendant called Rodriguez's cellular phone approximately twenty-five (25) times, despite not having permission to do so.

30. The Federal Communications Commission ("FCC") noted in its 2003 TCPA Order that a predictive dialer is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131.

31. The FCC further explained that the "principal feature of predictive dialing software is a timing function, not number storage or generation." *Id*.

32. Finally, the FCC stated that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id*. at 14091-92, paras. 132-33.

33. Defendant attempted to predict when Plaintiffs would be available through the use of predictive dialer equipment. This is shown by the multiple occasions where

Defendant called Bell and almost immediately afterwards called Rodriguez. The program was attempting to determine when either Plaintiff was available at any given time.

34. The conduct was not only willful, but was done with the intention of causing Plaintiffs such distress, so as to induce Bell to pay the alleged debt.

35. As a result of Defendant's conduct, Plaintiffs have sustained actual damages including but not limited to, embarrassment, emotional and mental pain and anguish.

36. Defendant would frequently call both Plaintiffs during work hours causing disruptions in their day.

37. Defendant's conduct induced stress, anxiety, and embarrassment in both Plaintiffs' daily life.

## COUNT I

### (Violations of the TCPA, 47 U.S.C. § 227)

38. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

39. Defendant violated the TCPA. Defendant's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or

    made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

  b. Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiffs at Plaintiffs' cellular telephones using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendant knowing and/or willfully violated the TCPA.

40. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiffs are entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendant knowingly and/or willfully violated the TCPA, Plaintiffs are entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT II
### Defendant's Invasion of Privacy
### (Intrusion Upon Seclusion)

41. Plaintiffs incorporate herein by reference all of the above paragraphs of this complaint as though fully set forth herein at length.

42. Defendant violated Plaintiffs' privacy. Defendant's violations include, but are not limited to, the following:

    a. Defendant intentionally intruded, physically or otherwise, upon Plaintiffs' solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt, despite numerous requests for the calls to cease.

    b. Defendant's conduct would be highly offensive to a reasonable person as Plaintiffs received calls frequently and consistently for a period of approximately nine months.

    c. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiffs to pay the alleged debt.

43. As a result of Defendant's violations of Plaintiffs' privacy, Defendant is liable to Plaintiffs for actual damages. If this Court finds that the conduct is found to be egregious, Plaintiffs may recover punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Michelle Bell-Rodriguez and Mario Rodriguez respectfully request judgment be entered against Defendant, Golden Valley Lending, Inc., for the following:

    A. Declaratory judgment that Defendant violated the TCPA;

    B. Statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

    C. Actual and punitive damages resulting from the invasion of privacy;

D. Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law; and

E. Any other relief that this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED,

Dated: December 1, 2017

By:*/s/ Stuart Price*
Stuart M. Price, Esq.
6345 Balboa Boulevard, Suite 247
Encino, CA 91316
T: (818) 205-2466
Stuart@pricelawgroup.com
Attorneys for Plaintiffs
*Michelle Bell-Rodriguez and*
*Mario Rodriguez*